The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Good morning to all counsel. Judge Cayatta and I would like to welcome Judge Casper of the District of Massachusetts back to the Court of Appeals. Thank you for your service to the circuit. Judge Casper, the clerk may call the first case. Thank you, Judge. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is United States v. Carlos Hernandez-Negron, appeal number 19-2021. Attorney Aria Califf, please introduce yourself for the record and proceed with your argument. Thank you. Good morning. May it please the Court, I am attorney Isabel Aria and I represent the appellant, Mr. Hernandez-Negron. I respectfully request one minute for a rebuttal. Yes. Thank you. This morning, the most important question Mr. Hernandez brings before this Court is, did the District Court abuse its discretion when it refused to listen to the testimony of the sole eyewitness to the home robbery the government relied on for a variant sentence? It strikes hard that a defendant would subpoena the eyewitness and victim of a crime to testify at his sentencing hearing, but it strikes harder that the government would rush to quash it. An eyewitness is, after all, the best evidence, and yet in this case, the Court kept the eyewitness out of the Court proceedings and chose to listen to not one, but two government witnesses that have no personal knowledge of the facts. District Court abused its discretion. Don't we need to focus on what the proceeding was? Here it was a sentencing, and if I recall correctly, there was evidence, I think the about the victim. Why shouldn't it matter in regards to the sentencing, the fact that it was a sentencing hearing? Because when considering whether this conduct, this uncharged conduct, the home robbery, then the Court needed to take extra steps. Now, the officer together with the report of the eyewitness witnesses called to the 9-1-1, all of those show inconsistencies and contradictions amongst themselves. They are all hearsay evidence, and they magnify and highlight the inconsistencies specifically with regards to the identification of the perpetrators, specifically of Mr. Hernandez Negron. But wasn't it available to defense counsel to meaningfully engage with that information and make those arguments to the sentencing judge? Isn't that all that's required for sentencing? It wasn't available because the defendant requested and subpoenaed the witness testify at the sentencing hearing in order to have the witness explain, clarify, give context as to why her descriptions of the perpetrator are so differing, depending on the moment in which she gave them out to either the police or to the prosecutor. And so, Mr. Hernandez was really in no position to refute the allegations against him and to push back on that burden because the evidence that he proposed to the Court, the best evidence that he had available to show the Court that it was less likely that he had participated in that robbery was denied. He was unable to present a complete picture to the Court. How do you distinguish our holding a couple of years ago in Barrios Miranda? Well, Your Honor, in this case, it is very different because, again, in this case, first of all, the transcript of the in-court proceedings are of a preliminary hearing in state court, and the burden of proof required there is different, lesser than that required at a sentencing hearing. The other thing is, with regards to the uncharged conduct in this case, Mr. Hernandez has the right, our system recognizes that a defendant has the right not to be sentenced on false information, and so due process requires that the defendant be given an adequate opportunity to refute the information relied on at sentencing. Mr. Hernandez tried to do that by having the sole eyewitness to the home robbery subpoena to testify at that hearing and be able to provide the Court with the complete evidence available so that the Court could make the appropriate decision. And wasn't her testimony corroborated by an officer, Officer Pedraza, who viewed a video and had known the defendant for a long time? Officer Pedraza, that testimony, he specifically said that the video that he was shown was not clear, the image was not clear, and that's around pages 373, 374 of the appendix. He says that, and he also recognized he could not see the face or any distinguishable feature, only the physique, and only by the way he would move his gait he was able to identify Mr. Hernandez, whom he never talked to as he testified during the sentencing hearing, and that he had only seen at maybe four or five in the morning when Mr. Hernandez would deliver the newspaper to him. And so, given these circumstances, how Agent Pedraza can allegedly or can identify Mr. Hernandez do not supplement or replace the eyewitness's account and whether or not he did in fact participate in that home robbery. Ms. Oria, had the prior proceedings at which the testimony was subject to cross-examination taken place in a federal court? No, Your Honor. No, had it happened had it happened that way, would your arguments for enforcement of the subpoena be the same as they are now, or is there some qualitative distinction between the proceeding in the state, in the local commonwealth court, as opposed to the federal court? Well, Your Honor, taking into consideration it might have been if it had happened in a in in federal court, perhaps on that occasion that Mr. Hernandez would have had the opportunity to ask the eyewitness important questions regarding her perception, her recollection of the incident, the amount of time and opportunity she had to observe. And so, perhaps then, because that testimony would have been preserved in a federal court, perhaps it wouldn't have been necessarily brought to the sentencing, but it was not in this case. And the areas subjected to cross-examination by the counselor in state court do not necessarily, are not necessarily broad enough or specific enough for the consideration of a sentencing hearing and the application of certain enhancements in the guidelines. That answer confuses me, but I thought she testified under oath in a preliminary proceeding in commonwealth court, and your client then had an opportunity to cross-examine her and did cross-examine her. Yes, he did cross-examine her in state court. However, there are areas that were considered in that cross-examination did not necessarily take into account all the areas that Mr. Hernandez would subject this eyewitness at cross-examination in his sentencing hearing. For example, your honor. No, but counsel, if we could just stick with the question for a minute. Had it been the same proceeding in federal court, is there some distinction between that proceeding, that earlier proceeding in the state court, and a similar proceeding in federal court that would have made it so that at the sentencing hearing, you still would have been entitled to in federal court? Yes, perhaps if a prior proceeding in federal court required a lesser burden of proof with a lesser requirement, then yes, it might be the case that the defendant would subpoena the eyewitness to testify. So you're not arguing that there's something unique about the commonwealth proceedings as opposed to similar proceedings in federal court? That distinguishes? Okay. No, I'm not. No, I'm not, your honor. Okay. Excuse me one second, counsel. Let me just check with the clerk. Dan, how are we doing for time? Do you know? Yes, judge. We've got about a minute and a half left. All right, thank you. Okay, thank you. I would like to point out that in this case, the district court's refusal to examine the live testimony of the sole eyewitness to the home robbery while permitting the government to present two witnesses, two live witnesses that had no personal knowledge of the events left Mr. Hernandez without any real possibility to test the material evidence in support of his punishment. The court then proceeded to apply enhancements to this sentence within a framework of incomplete evidence supported by the lesser reliable evidence, all composed of hearsay, but not the complete available evidence. And so the district court rendered a procedurally and substantively unreasonable sentence. The court denied the 3E1.1 reduction of one point reduction because Mr. Hernandez did not accept the conduct or the government's version of the fact, but our system recognizes that a defendant may deny the facts upon the government's allegations without jeopardizing our reductions for acceptance of responsibility so long as his denial is truthful. But in this case, because the district court denied Mr. Hernandez's request to present the best evidence available and refute the government's allegations and test whether his denial was truthful, in fact, then the application or the denial of this one point reduction renders an unreasonable sentence. Counsel, let me ask the panel whether there are additional questions at this time. All right, you have reserved some time. Thank you. If you would mute your devices, we'll hear from Mr. Pierce. May it please the court, James Pierce for the United States. The district court did not abuse its discretion when it quashed the defendant's sentencing subpoena and the 84-month sentence that it imposed was both procedurally and substantively reasonable. Now, turning to the first issue, the defendant's due process right at sentencing certainly includes the right to be sentenced based on reliable and accurate information, but it does not include the Sixth Amendment right to confront a witness. Now, as the panel has already indicated and noted, the defendant, in fact, had and availed himself of that right, and that's reflected in over 100 pages of cross-examination at the state preliminary hearing on this same kind of core of facts. And counsel, let me just ask you, though, once the judge allows the two witnesses on the government side but denies the subpoena for, as I understood it, the witness that the defense wants, at that point, is it not an abuse of discretion, meaning that the presentation of live testimony is uneven? Isn't that an abuse of discretion? No, Your Honor. Certainly, there's no case that stands for that proposition, and the burden is on the government at sentencing to prove up the conduct by a preponderance of the evidence. And in particular here, we're talking about a victim of a crime, and as the government noted below at page 311 of the record, there are particular rights of crime victims under the Crime Victim Rights Act to reasonably protect that victim from the defendant. Now, here, it may be a closer call if the defendant didn't have the opportunity in the state preliminary hearing to extensively cross-examine the witness and to answer Chief Judge Howard's question. I'm not aware of any distinction between the state proceeding and federal proceeding that would be material for the determination of the subpoena. As Judge Kayada indicated, the victim was under oath and therefore subject to cross-examination and potential perjury for any lies under oath. And the defendant in that 100 pages of cross-examination testimony performed precisely what I understand the defendant here today to be talking about, trying to call attention to potential inconsistencies in the victim's account that had to do with eye color or skin color or other information. And if anything, the two live witnesses that testified at the hearing, Officers Jose and Rodriguez and Jose Pedraza, the defendant made ample use there of also calling to the district court's attention inconsistencies in the victim's testimony. So this was all information that was before the sentencing court, the district court, when it was making its sentencing determinations as to the defendant. In addition, and as Judge Kayada pointed out, even leaving aside the identification by the principal victim, Jones and Throne, there was also the entirely independent corroborating identification by Officer Jose Pedraza, who had known the defendant for over 20 years. And I don't think the representation about the record is quite accurate as to pages 370 to 374. It's true that Officer Pedraza was not able to see the defendant's face close up, but what the officer was able to identify was that the defendant by his height and the way that he moved and his physical gestures were in fact the individual that he had known for over 20 years and that had delivered his newspaper. And so all of that was ample evidence by which the government could prove up and did prove up by a preponderance of the evidence, the defendant's involvement in the events of May 7th, 2016. I'd also disagree with my friend on the other side that there is to be drawn from the different evidentiary standards. The probable cause determination at a state preliminary hearing, I concede that I'm not an expert on the state process, but probable cause is at, if not higher than a preponderance of the evidence standard that would be required at sentencing. And so the burdens there are similar, if not higher in the state preliminary proceeding where the victim again testified and identified the defendant as the primary assailant in the events on May 7th, 2016. I'm happy also to talk about some of the other issues including the sentencing enhancements or the 3553A analysis, but I don't have anything else to say unless the court has specific questions. And of course, I won't address those unless the court has particular questions as to the other issues. Yes, the sentence was nearly two and a half times the upper end of the guidelines range. What is it that was so especially compelling about the facts here that took them so far out of the heartland that would justify that upward variance? I think there were four different factors that the district court properly relied on to reach the very end 84 month sentence. I think first as the district court indicated, the nature of the offense here was not the kind of felon in possession case where perhaps the government has searched a residence or a car and found a gun or even one where a defendant has perhaps engaged in a drug transaction or some other criminal conduct with a gun holstered on a waist. This was one of great violence and of great danger, not only to the principal victim, also to the victim's husband, Ismael Fontanes, but also many people in the nearby neighborhood. The defendant and his confederates discharged at least 35 guns in broad daylight, endangering people in the neighborhood. So I think that's the first point. The second, and the PSR reflected this, and this is on page 23 of the supplemental appendix, is that the defendant's criminal history category, which was two, substantially underrepresented the defendant's actual criminal history. The district court commented that it was the seventh known conviction and the tenth known arrest for the defendant. Many of those arrests and convictions involved crimes, similarly violent crimes, murder, robberies, some of them were drug trafficking crimes, and some of them had timed out. Some were, I believe, disposed of for sort of state procedural reasons, but that criminal history, that quite extensive criminal history, was not reflected in criminal history category two. Third, and relatedly, the PSR also noted on page 23, and the district court commented, that a guideline sentence would not protect the public nor adequately deter the defendant. The defendant had spent time in custody before, but the district court commented that those sentences, relatively lenient sentences, had not deterred the defendant from continuing to engage in the kind of very violent, very dangerous conduct that happened on May 7, 2016. And then finally, the district court noted that the defendant had absconded from justice, that he had left Puerto Rico, he was ultimately arrested in Massachusetts. I know there's a bit of back and forth in the briefing about this, but this was in PSR at page 15. The defendant made no objection of this at sentencing, and belatedly raises a claim here as to that, but I think that is a fourth reason that justifies the district court's 84 month variant sentence. Was there any objection to the court's reliance on prior arrests? I do not believe there were any objections, and I know under this case, this court's relatively recent decision in Morero-Perez, there's concern about relying on arrests that don't otherwise have some reliable sense of evidence. There was no objection here, so that issue was not teed up for the court, and certainly the PSR had laid out the facts, and the court, absent those objections, was entitled, as it did, to rely on that information. Judge Cayana, I also just wanted to indicate, and I apologize, on the earlier issue, I think certainly is a strong weight in the government's favor here. I would also indicate that there, unlike here, the victim was never subject to any cross-examination in any forum, whereas here, of course, as we've discussed in the state preliminary hearing, there was extensive cross-examination. So I think, in fact, this case is even more compelling than the Berrios-Miranda decision. Unless there are other questions, I'm happy to yield the balance of my time to the court. Thank you, counsel. Thank you. Ms. Oria. Thank you. About the objections to the PSR, I would like to state that Mr. Hernandez, by way of his attorney in district court, did file objections to the PSR and did, in that filing, address the issue of the prior arrests and how the court should consider these if no independent evidence was brought before the district court about those. I would like to say… I didn't see that in the blue brief on appeal. Am I correct if it wasn't raised on appeal? The issue about the taking into consideration the prior arrests? Yes. I believe so. It is addressed by…and I'm sorry I missed the page, but I believe that the brief does address the issue of the prior arrests. However, I would like to say this one thing. The sentencing under the guidelines is a thoroughly fact-driven process, and so it requires fact-based conclusions, and so district court did not allow itself to have the complete evidence before it. I agree, and so case law definitely states that a sentencing court can listen and have hearsay evidence, but in this case, district court was put in a position to recognize that all of this hearsay evidence contradicted itself, and then, with regards to reliability, it was put into question. The only way to really give any foundation for the court to consider the testimony brought in by the government was to have the eyewitness of this home robbery, this uncharged conduct, be examined during the sentencing hearing in federal court. Do I understand correctly that there's an issue as to whether the PSR omitted some information that both parties agreed should have been in it that would assist BOP in ascertaining credit? That is correct, Your Honor. There was some litigation, some post-conviction motions regarding credit for the time Mr. Hernandez spent on a state jail regarding this incident of the home robbery after the court had determined there was relevant conduct. Mr. Hernandez then proceeded to ask the state jail for what was now considered relevant conduct. The court ordered the probation officer— My question is much simpler. Did both parties agree today that the PSR should—agree in the proceeding below that the PSR should be amended to correct that? Yes. Thank you. Thank you, counsel. Thank you. That concludes argument in this case. Attorney Oria and Attorney Pierce should disconnect from the hearing at this time.